## COUNTY OF WORCESTER, OCTOBER TERM 1866, AT WORCESTER.

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. EBENEZER R. HOAR, ⎫
Hon. REUBEN A. CHAPMAN, ⎬ Justices.
Hon. DWIGHT FOSTER, ⎪
Hon. JOHN WELLS, ⎭

MEMORANDUM. On the twenty-second day of September 1866, Hon. John Wells, of Chicopee, was appointed a justice of this court, in place of Mr. Justice Dewey, deceased, and took his seat on the bench on the first day of this term.

---

## Moses Knapp vs. Douglas Axe Company.

If a bill in equity against mill-owners, who have a right by grant to raise the water by means of their dam to a certain height, alleges that the defendants threaten to raise the water "by means of flash-boards placed on said dam from twelve to fourteen inches above the height of the dam and above the height specified in the conveyance aforesaid," and prays for an injunction against "raising or maintaining the water of said stream, by means of flash-boards or otherwise, above the height mentioned in the deed aforesaid and the height of the permanent dam," relief may be granted by ordering the removal of flash-boards which were on the permanent dam at the time of the filing of the bill, and enjoining the defendants against their future use.

The acceptance of a mere grant, to the owner of a mill privilege, of the right to flow land above to a certain extent, which is defined in the deed, without any words binding the grantee to confine himself to that limit, will not deprive him of his right under the mill

acts to flow the land beyond; and building a dam which does not exhaust the privilege conveyed by such grant will not prevent the grantee from subsequently, within twenty years, availing himself of the residue thereof.

A grant to the owner of a lower mill privilege of the right to flow land above, by means of a dam, to any extent to which he may raise the water " without interfering with the present legal rights " of owners of an upper mill upon the same stream, gives the right to flow only so far as could, at the time of the grant, be done without impeding in any degree the works of the upper mill.

BILL IN EQUITY alleging that on the 8th of September 1845 the plaintiff, being the owner of certain land bordering on Mumford River, conveyed to Warren Hunt " the right and privilege to flow and cover with water any land of the said Moses Knapp which the said Warren Hunt may flow and cover with water by means of a certain dam which the said Warren Hunt is about to erect below the ' Lower Privilege,' so called, and for the purpose of better supplying the same with water, to any extent to which the said Warren Hunt may raise or maintain a head of water by means of said dam without interfering with the present legal rights of the Douglas Manufacturing Company on Mumford River, immediately above said ' Lower Privilege.' It is not intended by this deed to convey the right to flow the land of any person except the land of the said Moses Knapp, and this conveyance is made subject to the legal rights of all other persons whose lands may be flowed by means of said dam." The bill further alleged that thereafter, in the same year, Hunt erected a permanent dam and raised water thereby and flowed the premises as far as could be done without interfering with the legal rights of the Douglas Manufacturing Company ; that thereafter the plaintiff erected another mill on said land and now uses the same ; that Hunt thereafter conveyed his title and rights to the defendants ; that the defendants have no other or further right to flow the plaintiff's land than that above set forth ; yet they threaten to raise the water by means of flash-boards placed on said dam from twelve to fourteen inches above the height of the dam, and above the height specified in the conveyance aforesaid, which flowing will set back the water upon the plaintiff's land and destroy his mill. The prayer was for an injunction against raising or maintaining the water of said stream, by means of

flash-boards or otherwise, above the height mentioned in the deed aforesaid, and the height of the permanent dam.

The answer denied that the permanent dam erected by Hunt raised the water and flowed the premises as far as could be done without interfering with the legal rights of the Douglas Manufacturing Company, but averred the contrary, and alleged that Hunt, immediately upon the erection of said dam, placed flash-boards thereon of the same height as those upon the dam at the time of filing the bill, and that the same, or others of the same height, have remained thereon ever since; that these flash-boards do not raise the water to interfere with the rights of the Douglas Manufacturing Company, or flow the land of the plaintiff more than they are entitled to flow it under said deed; denied that they have no other right to flow the plaintiff's land than that granted by said deed, and averred that they have a right to flow the same under the mill acts; admitted the erection of the plaintiff's mill, but averred that this was after Hunt had raised his dam and the water to their present height; and denied that they have threatened to raise the water above the height of the dam, and above the height specified in the deed, or have purposed to put on any additional flash-boards.

It was conceded that in the year 1846 the defendants' predecessor erected a dam, either with or without flash-boards, across Mumford River, called the Gilboa dam, which subsequently at various times was raised by means of flash-boards of different heights until the height of thirteen inches above the permanent dam was reached, which is the height of the present flash-boards maintained by the defendants. The time when the height of the dam was so increased was a matter in dispute between the parties. It was also conceded that in 1852 the plaintiff erected his mill on the stream above said dam. The defendants have no intention of raising the flash-boards above the height at which they were when the bill was filed.

The court thereupon directed the following issue to be tried by a jury : " Have the defendants raised the water by means of their Gilboa dam since the commencement of the plaintiff's mill higher than they had before, and if so, how much ? " To

which the jury replied, "Yes, six inches." The defendants objected that no such issue could be raised under the bill, but the objection was overruled.

It was conceded also that such raising would set back the water to that extent upon the plaintiff's mill.

The cause then came on for further hearing, before *Colt*, J., when the plaintiff introduced in evidence a deed from Job Knapp, of whose remaining land he was the heir, to Richard Olney and others, under which the Douglas Manufacturing Company claim their rights, of a tract of land for the purpose of completing a cotton factory, and such other buildings as the grantees might think best, " and also the privilege of digging a sufficient ditch in width and in depth to carry the water from the water works which may be erected on the premises through the said Knapp's other land, and at all times to have free access to repair or alter the said ditch."

The defendants contended that under the deed to Hunt they had the right to flow the land and property of the plaintiff to any extent which did not interfere with the rights of the Douglas Manufacturing Company on Mumford River, as they existed at its date, September 8th 1845, and that, unless the water raised by their dam flowed so high as to set back water upon the wheel of said company, or so as to impede or interfere with the operation of the wheel, or the running of the wheel or machinery of said company, they did not interfere with such legal rights; and they offered evidence that said trench was in 1862 deepened fifteen inches, and that their dam with the flash-boards thereon at the date of the bill had been so maintained for many years, and did not and does not flow back the water upon or so as in any way to interfere with the wheel, machinery, mill or running of the works of said company, as the same were when the grant to Hunt was made, or when said dam was erected, or since.

The plaintiff contended that by once erecting and completing a dam, either with or without flash-boards, the defendants or Hunt, under whom they claimed, had exhausted their grant, and could not afterwards raise the same; and that under the grant to Hunt they could not set back the water into the trench of the

Douglas Manufacturing Company, even if they did not impede the works, and offered evidence that the original dam without flash-boards set the water back into the mouth of said trench, and that any raising of the same raised and set the water into said trench, and further that the raising of the dam by the defendants raised the water high enough to impede the works of the Douglas Manufacturing Company as they were when the deed to Hunt was given.

The judge reserved the case for the determination of the full court, it being understood that if the facts offered to be proved by either party should, in the opinion of the court, be material, further issues might be framed for a jury, if either party should desire it.

*G. F. Hoar*, for the plaintiff, cited, to the point that when Hunt had erected one dam he had exhausted his grant, and had no further right to flow the plaintiff's land under the deed, *Goodrich* v. *Longley*, 1 Gray, 615; *S. C.* 4 Gray, 379; *Clark* v. *Munyan*, 22 Pick. 410; *Blaney* v. *Rice*, 20 Pick. 62; *Dryden* v. *Jepherson*, 18 Pick. 391; *Waterman* v. *Johnson*, 13 Pick. 261; *Boynton* v. *Rees*, 8 Pick. 329; *Choate* v. *Burnham*, 7 Pick. 274; *Jones* v. *Percival*, 5 Pick. 485; *Makepeace* v. *Bancroft*, 12 Mass. 469; *Wynkoop* v. *Burger*, 12 Johns. 222.

*P. C. Bacon & C. T. Russell*, for the defendants.

WELLS, J. The first question to be disposed of arises upon the pleadings.

The defendants contend, as the bill charges only a threatened encroachment upon the plaintiff's rights by a raising of the water, which will set it back upon his land, by means of flash-boards which they have provided for that purpose, and as it appears by the report that " the defendants have no intention of raising the flash-boards above the height at which they were when the bill was filed," that the prayer for relief, and the relief to be granted upon the bill in its present form, cannot be so applied as to require a reduction of structures already erected before the filing of the bill, and which had been maintained, as a part of the dam, for several years. If this be so, the bill must be dismissed, unless amended.

But this does not seem to us to be the position of the case. The bill charges that the defendants threaten to raise the water not higher than heretofore, but " by means of flash-boards placed on said dam, from twelve to fourteen inches above the height of the dam, and above the height specified in the conveyance aforesaid," (namely, the deed from the plaintiff under which the defendants derive their right to flow his land,) which will set the water back upon the plaintiff's mill, and prays for an injunction against " raising or maintaining the water of said stream, by means of flash-boards or otherwise, above the height mentioned in the deed aforesaid and the height of the permanent dam." It is obvious that the allegations and the prayer of the bill are aimed at the future use of any flash-boards or other means, additional to the permanent structure, for raising the water above the height contemplated by the plaintiff's deed to Hunt in 1845 ; so that, when the true limits of that grant are ascertained, the prayer for relief applies to whatever means the defendants may seek to use, aside from their permanent dam, to raise the water above those limits. Such appliances are of a temporary nature and use, incidental only to the maintenance of the permanent structure. An injunction against their future use meets all the necessities of the plaintiff's case, and would seem to us to be an adequate and proper mode to prevent their continued maintenance, notwithstanding the fact that they were and had been for many years in actual use before the filing of the plaintiff's bill.

It is also objected that the issue submitted to the jury is not properly raised by the pleadings, nor material to the determination of any question involved in the case.

The bill, after stating the defendants' title under the deed of 1845, alleges that " the defendants have no other or further right to flow the land of your orator than that above set forth." By their answer the defendants " deny that they have no other or further right," and aver that they have a right to flow under the mill acts ; and also aver that they raised the flash-boards to their present height before the erection of the plaintiff's mill. The issue submitted to the jury seems clearly to be raised by these

pleadings. But it does not appear to be material; certainly not decisive, in the present aspect of the case. If the defendants' dam and flash-boards do not raise the water above the height authorized by the deed of 1845, the issue tried is wholly immaterial; because in that case they have only exercised the rights granted to them, and the plaintiff cannot limit those rights by building a mill on the stream above, before they begin to exercise them to their full extent. On the other hand, if it should be found that the water is raised above that height, the defendants can justify only under the mill acts, and then the issue becomes material and may be decisive.

The court are of opinion that the deed of 1845 from the plaintiff to Hunt, being simply a grant of a right to flow to a certain extent, without any negative words, does not restrict the defendants from the exercise of their statute right to flow further. The right to build the dam was not derived from that grant. It was built upon land already owned by the grantee. The right to flow under the mill acts was incident to that ownership, and cannot be held to have been parted with except by some positive agreement or necessary implication. *Judd* v. *Wells*, 12 Met. 504. The suggestion in *Burnham* v. *Story*, 3 Allen, 378, must be understood to apply, not to a case of a mere grant of the right of flowing, but where the terms of the deed are such that the grantee, by its acceptance, binds himself to abide by the limit which it fixes. .

It becomes necessary, therefore, to determine, first, what was the limit of the defendants' right under the deed of 1845, which is a question of law; secondly, whether they have exceeded that limit, which is a question of fact.

The deed from Moses Knapp to Warren Hunt conveys " the right and privilege to flow and cover with water any land of the said Moses Knapp which the said Warren Hunt may flow and cover with water by means of a certain dam which the said Warren Hunt is about to erect below the ' Lower Privilege,' so called, and for the purpose of better supplying the same with water, to any extent to which the said Warren Hunt may raise or maintain a head of water by means of said dam without

interfering with the present legal rights of the Douglas Manu-
facturing Company on Mumford River, immediately above said
'Lower Privilege.' It is not intended by this deed to convey the
right to flow the land of any person except the land of the said
Moses Knapp, and this conveyance is made subject to the legal
rights of all other persons whose lands may be flowed by means
of said dam."

We are satisfied that the reference to the "present legal
rights of the Douglas Manufacturing Company" on the river
had a different purpose from that which is manifest in the last
clause. The Douglas Manufacturing Company had a prior
grant, and had already erected a mill on the stream. Under the
mill acts that was an insuperable barrier, beyond which the
grantee in this deed could not raise his pond; and we must
assume that both grantor and grantee undoubtedly understood,
in considering the subject matter of the grant, and estimating
the consideration, that that was and would be a fixed limit.
We think therefore that it must be taken as the measure of the
right granted. By the term "legal rights," in this clause, must
be understood those rights which would control the flowing, and
not merely those rights which every landholder has by virtue of
ownership, but which are subordinate, under the statutes, to the
rights of the owner of a mill site below, and only entitle him to
compensation. Of this latter class are those mentioned in the
last clause of the deed. And so also, as we think, are any rights
of the Douglas Manufacturing Company as land owners, as well
as their rights in the trench or waste raceway. The right to
this trench is only as a means to conduct the water from their
wheels. The defendants do not "interfere" with their "legal
rights" merely by setting the water into this trench, if they do
not thereby flood their wheels nor impede their works in any
degree. That this is the correct view of the limit intended is
evident from the further fact that it is to be determined by the
(then) "present legal rights" of the Douglas Manufacturing
Company, and not by those which they acquired by their deed
from the plaintiff's ancestor.

Such then being the measure of the right granted by the deed

to Hunt, there can be no ground for the claim that it was limited by the height of the dam as at first built; or, in other words, that the dam, with such flash-boards as were placed upon it when first erected, exhausted the right. A right acquired by deed is not lost by mere temporary non-user, without any act showing an intention to abandon it. The use of narrow flash-boards, or none at all, is not an act showing an intention to surrender all further right. Where the right granted is not precisely fixed by the deed, and the parties afterwards, by some mutual agreement or act of demarcation, fix what by the terms of the deed is ambiguous or might be the subject of controversy, such act or agreement may be held to define and so limit the right to which the grant attaches. This was the case in *Dryden* v. *Jepherson*, 18 Pick. 385, and in various decisions upon the establishment of boundaries by subsequent acts of the parties. So also where the grant is without any limit, and the operation of the deed becomes fixed and applied to its subject matter only by subsequent acts contemplated in the conveyance; then what was executory in the writing becomes executed by such acts. This was the case in *Goodrich* v. *Longley*, 1 Gray, 615 ; *S. C.* 4 Gray, 379. The present case does not seem to come within the principle of any of the authorities cited in support of the position taken by the plaintiff in this respect.

The conclusion therefore is, that the defendants have a right, under the deed to Hunt, to raise the water of their pond to any height, which in 1845 would not have interfered with or impeded the operation of the wheels of the Douglas Manufacturing Company. If they have not gone and do not, by their flash-boards, propose to go beyond that height, the plaintiff has no cause of complaint and cannot maintain his bill. If they exceed that limit, whatever may be the rights of the Douglas Manufacturing Company, the plaintiff's rights as to his remaining proprietorship are to be determined by the mill acts. It will be necessary therefore that the case should stand for further hearing upon the question of fact which is still undetermined ; namely, whether the defendants' dam, with all its flash-boards, does and will have the effect to raise the water above the

height provided for in the deed from Moses Knapp to Hunt in 1845.

A further question may also arise, if the defendants should be compelled to rely upon the mill acts for their justification, to wit, whether and how far the present and proposed flowing does or will in fact interfere with the mill of the plaintiff; because the verdict only determines the amount of increase in the height of the flash-boards since the mill was built, not the extent of the flowing upon the mill.