NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-934

COMMONWEALTH

vs.

KENNETH PARRY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a five-day jury trial in the Superior Court, the defendant, Kenneth Parry, was adjudged a sexually dangerous person (SDP) pursuant to G. L. c. 123A, § 14 (d), and committed to the Massachusetts Treatment Center for a period of from one day to life.  On appeal, the defendant challenges the sufficiency of the evidence, claiming that the evidence failed to establish beyond a reasonable doubt that he suffers from a statutorily required "mental abnormality or personality disorder" making him more likely to commit further sexual offenses.  G. L. c. 123A, § 1.  We affirm.

1.  Facts of the governing offenses.  In 2006, Parry was convicted of two counts of assault and battery, five counts of

indecent assault and battery on a child under fourteen, and one count of unnatural rape of a child.[1]  He was sentenced to a term of incarceration of from twelve to fifteen years in prison with a five-year term of probation to be served from and after his term of incarceration.  The victims, whom we shall refer to as C.K. and N.K., were twelve year old boys who were friendly with Parry's son.  During the months of November and December 2003, the victims slept over Parry's home.  On the first sleepover, C.K. was awoken to Parry "cuddling" him.  During another sleepover, C.K. awoke to Parry once again "cuddling" him and then stroking C.K.'s penis outside of his clothing.  Another time, C.K. awoke to Parry touching C.K.'s penis and then anally raping him.  Parry also sexually assaulted N.K. during these sleepovers, touching N.K.'s penis over his clothing, "spooning" him, and, on two occasions, N.K. awoke to Parry "dry humping" him.

---

[1] As this court stated in Commonwealth v. Garcia, 95 Mass. App. Ct. 1, 5 n.8 (2019),

"We recognize that the language appearing in [certain] statute[s] dates to an earlier time.  We do not intend by our reference to the term, consistent with the statutory language, to adopt or endorse any pejorative connotation that may flow from the designation of such conduct as 'unnatural' (even when engaged in by consenting adults), and we invite the Legislature to update the statutory language" (emphasis added).

2

2.  Additional sexual misconduct.  In 2002, Parry was charged with rape of a child and two counts of indecent assault and battery on a child fourteen or over but found not guilty after a jury trial.  The complaint alleged that Parry, who was in a dating relationship with a woman who had a son, had slept in the same bed as the woman's son.  The son reported that he was asleep in bed and awoke to Parry attempting to anally penetrate him, and that Parry forced him to masturbate Parry until he ejaculated.  In a separate case in 2004, Parry was charged with four counts of rape of a child, four counts of indecent assault and battery on a child under fourteen, and two counts of disseminating matter harmful to a child.  The charges in that case were based on the reports of two boys, both of whom were friendly with Parry's son.  One boy reported that Parry had orally and anally raped him, and both boys reported that Parry committed indecent assault and battery during a sleepover or a camping trip.  This case was dismissed after a mistrial occurred.

3.  Procedural history.  In December of 2018, Robert H. Joss, Ph.D., provided an expert opinion that the defendant was a sexually dangerous person, and the Commonwealth filed a petition for civil commitment in the Superior Court.  In February of 2021, a finding of probable cause was entered.  Two qualified examiners interviewed and evaluated the defendant and reached

3

different conclusions.  Qualified examiner Dr. Kaitlyn Peretti wrote a report opining that Parry was an SDP, and qualified examiner Dr. Gregg A. Belle wrote a report that Parry was not an SDP.  Parry retained two licensed psychologists, Dr. Leonard A. Bard and Dr. Laurie L. Guidry, to testify as independent experts, both of whom opined that Parry was not sexually dangerous.

Trial commenced on May 5, 2023.[2]  The Commonwealth called one witness, qualified examiner Dr. Peretti, and introduced seven exhibits into evidence.  The defendant called qualified examiner Dr. Belle and the two independent expert witnesses, Drs. Bard and Guidry, along with the introduction of six exhibits into evidence.  The jury found that Parry was a sexually dangerous person.  This appeal followed, challenging the sufficiency of the evidence.

4.  Sufficiency of the evidence.  In analyzing a challenge to the sufficiency of the evidence, we consider "whether, after viewing the evidence (and all permissible inferences) in the light most favorable to the Commonwealth, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of sexual dangerousness, as defined by G. L. c. 123A, § 1."  Commonwealth v. Husband, 82 Mass. App. Ct. 1, 4 (2012),

---

[2] At the time of trial, the defendant was fifty-seven years of age.

4

quoting Commonwealth v. Blake, 454 Mass. 267, 271 (2009) (Ireland, J., concurring).

Parry challenges the sufficiency of the evidence and argues that the Commonwealth's evidence failed to prove beyond a reasonable doubt that he is a sexually dangerous person as defined by G. L. c. 123A, § 1. This statute defines a sexually dangerous person as a person convicted of certain enumerated sexual offenses and who suffers "from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility" (citation omitted). Commonwealth v. Starkus, 69 Mass. App. Ct. 326, 335 (2007).

Specifically, Parry claims that the evidence was insufficient to prove that he suffers from a mental abnormality that would result in a risk to reoffend sexually. The term "mental abnormality" has been defined as a "congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." Starkus, 69 Mass. App. Ct. at 335, quoting G. L. c. 123A, § 1. As to the risk of reoffense, it is for the fact finder to determine what is "likely." Commonwealth v. Boucher, 438 Mass. 274, 276 (2002). "Such a determination must

5

be made on a case-by-case basis, by analyzing a number of factors, including the seriousness of the threatened harm, the relative certainty of the anticipated harm, and the possibility of successful intervention to prevent that harm."  Id.  "While 'likely' indicates more than a mere propensity or possibility, it is not bound to the statistical probability inherent in a definition such as 'more likely than not.'"  Id. at 277.

Here, the Commonwealth presented evidence from Dr. Peretti, a qualified examiner, who opined that Parry suffered from the mental abnormality of pedophilic disorder under the Diagnostic and Statistical Manual of Mental Disorders (DSM-V).  In her opinion, due to that mental abnormality, Parry was likely to sexually reoffend if he was not confined to a secure facility. On the other hand, the defendant presented evidence from three experts.  Dr. Belle opined that Parry's governing offense and history supports a determination that his behavior was driven by pedophilic disorder, but that he did not meet the criteria for a finding of mental abnormality.  Specifically, in 2021, Dr. Belle opined that Parry did meet the definition of a mental abnormality "best described as Pedophilic Disorder, Sexually Attracted to Males, Nonexclusive Type."  In 2023, however, Dr. Belle amended his opinion and opined that even though "Mr. Parry's underlying Pedophilic Disorder drove his sexual offending behaviors, it is no longer [Dr. Belle's] opinion that

6

[Parry's] paraphilic condition represents a statutorily defined mental abnormality." Drs. Guidry and Bard opined that Parry did not meet the criteria for having a mental abnormality, and all of Parry's experts agreed that he was not likely to engage in a sexual offense if not confined to a secure facility.[3]

We agree with the Commonwealth that Parry's claim "is an attack upon the weight, not the sufficiency, of the evidence." Husband, 82 Mass. App. Ct. at 6. The fact finder must decide how much weight to give the evidence. "The choice between the credibility of two sets of experts belonged to [the jury] as the trier[s] of fact and as . . . firsthand observer[s] of the testimony and demeanor of the witnesses under direct and cross-examination." Id. We further note that the Commonwealth carried its burden of proof of the element of "mental abnormality." The jury considered the written report and testimony of Dr. Peretti, who opined that Parry met the criteria for a pedophilic disorder, nonexclusive type, sexually attracted to males, under the DSM-V definition.[4] Dr. Peretti's opinion was

---

[3] Dr. Belle opined that Parry was properly diagnosed with pedophilic disorder but that Parry's disorder does not meet the statutory definition of a mental abnormality and would not cause him to create future harm to children. Dr. Bard opined that Parry does not suffer from a mental abnormality. Dr. Guidry opined that Parry does not suffer from a mental abnormality or personality disorder.

[4] According to Dr. Peretti, the DSM-V diagnostic criteria for pedophilic disorder are that (A) over a period of at least

7

based on the fact Parry had offended against two prepubescent boys on three occasions, reported being sexually attracted to his victims, and that his sexual attraction to the victims contributed to his crimes. Dr. Peretti also considered the possibility that Parry was sexually preoccupied with prepubescent boys, committed the sexual offenses against these prepubescent boys despite having an age-appropriate sexual partner, and committed the offenses while his son and wife were present in the home. Further, Dr. Peretti did not credit Parry's statement that he was no longer interested in sex and did not have any sexual thoughts due to a medical condition, especially given the fact that Parry's single observational report was the result of engaging in consensual oral sex with a peer at the Massachusetts Treatment Center. The evidence was therefore sufficient to establish that Parry suffers from a mental abnormality.

The defendant next contends that even if the Commonwealth established that he suffered from a mental abnormality, it failed to present sufficient evidence to establish his

---

six months, the individual has recurrent intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age thirteen or younger); (B) the individual has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty; and (C) the individual is at least sixteen years old and at least five years older than the child or children in criterion A.

8

likelihood of risk to reoffend.  Again, the Commonwealth presented sufficient evidence to establish that Parry was likely to reoffend sexually if not confined to a secure facility.

Dr. Peretti's opinion that Parry continued to be a risk to reoffend sexually was based in part on her interpretation of both static and dynamic risk factors[5] as well as Parry's score on the Static-99R, a tool that specifically measures a sex offender's risk to reoffend.  In fact, at trial, all of the experts scored Parry as a "four" on a risk scale from negative three to twelve under the Static-99R.  The experts disagreed, however, as to what this score meant as far as Parry's risk to reoffend.  According to Dr. Peretti, Parry's risk to reoffend sexually was "Above Average."  Additionally, while Dr. Peretti acknowledged that Parry had attended and made progress in sex offender treatment, in her opinion his risk was not sufficiently reduced because intensive sex offender therapy had just begun. The fact that Parry had not spent a considerable amount of time in intensive sex offender counselling was important to Dr. Peretti's risk analysis.  She opined that because Parry had yet

---

[5] The static factors Dr. Peretti relied on were Parry's age, past history, and the nature of his sexual offenses.  Some of the dynamic factors that Dr. Peretti considered were Parry's interest in prepubescent boys, his failure to create interventions to address this deviancy, his failure to understand how to manage his risk of reoffense in the community, intimacy deficits, poor problem solving skills, a lack of positive social influences, and poor release planning.

9

to address the motivating reasons for his sexually deviant behavior, he presented as a risk to reoffend. Dr. Peretti opined that Parry was likely to reoffend sexually if he was not confined to a secure institution. She considered "the amount of historic risk that's present, the amount of dynamic risk factors, and that although he has probation and that's protective, it doesn't sufficiently outweigh the amount of risk that he presents with." Dr. Peretti further explained that when she considered risk, she also considered the Static-99R score, the fact that Parry has not completed sex offender treatment, that he was unable to demonstrate an understanding of the factors that contributed to his offending and, importantly, Parry was unable to demonstrate an understanding of what his current risks are or how he would manage those risks in the community. The Commonwealth has met its burden with respect to risk to reoffend.

In conclusion, the defendant's claim on appeal boils down to a disagreement with the weight of the evidence rather than the sufficiency. While the jury were free to reject the opinion of Dr. Peretti and accept the opinions of Drs. Bard, Belle, and Guidry, it was equally permissible for the jury to credit the opinion of Dr. Peretti. "Experts' conclusions are not binding on the trier of fact, who may decline to adopt them in whole or in part. As a corollary, where testimony from various experts

10

is conflicting, it is for the trier of fact to determine which expert's testimony to accept, if any."  <u>Husband</u>, 82 Mass. App. Ct. at 10, quoting Brodin & Avery, Massachusetts Evidence § 7.4.3 (8th ed. 2007).

<u>Judgment affirmed</u>.

By the Court (Rubin, Henry & Walsh, JJ.[6]),

Clerk

Entered:  March 18, 2025.

---

[6] The panelists are listed in order of seniority.