Kinder, C. Jeffrey, J.
This is an action commenced on March 11, 2009, by the District Attorney for Hampden County on behalf of the plaintiff seeking a commitment of the respondent, Robert Laflamme, under the provisions of G.L.c. 123A, §12-15. Counsel was appointed for the respondent on March 17, 2009. An order was entered on March 20, 2009, under Section 13(a) for the temporary commitment of the respondent at the Massachusetts Treatment Center, the respondent having waived his right to a probable cause hearing. As required by G.L.c. 123, two qualified examiners issued reports in April 2009. Dr. Katrin Rouse-Weir opined that the respondent is sexually dangerous. Dr. William Hazelett concluded that he is not. The matter came on for trial on December 14, 2009, before me, sitting without a jury. After consideration of the credible evidence, I make the following findings of fact and rulings of law.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Introduction

According to G.L.c. 123A, § 14(d), the Commonwealth has the burden to prove beyond a reasonable doubt that the respondent is a sexually dangerous person, as defined in section one thereof: “a person who has been convicted by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility.” It is not enough for the Commonwealth to prove, without more, that the respondent was or is dangerous, or that there is a likelihood of his re-offending sexually, or that there is a likelihood of his re-offending generally. The statute requires the Commonwealth to prove beyond a reasonable doubt that there presently exists a mental abnormality or personality disorder and, as a result, there is a likelihood that he will offend sexually. Moreover, according to the statutory definition of sexually dangerous person,[1] the assessment of whether a particular respondent qualifies as such must be made as of the present time. There must be evidence presented by the Commonwealth, in support of its burden to prove that the respondent is a sexually dangerous person, that the respondent continues to suffer from a mental abnormality or personality disorder at the present time. The Supreme Judicial Court has held that “(w)hether a person suffers from a *554 mental abnormality or personality defect, as well as the predictive behavioral question of the likelihood that a person suffering from such a condition will commit a sexual offense, are matters beyond the range of ordinary experience and require expert testimony.” Commonwealth v. Bruno, 432 Mass. 489, 511 (2000).
Five psychologists testified during the trial. All of the professionals utilized a guided clinical approach to their evaluations, combining traditional clinical analysis and judgment with actuarial factors noted in the relevant literature and accepted by them as scientifically significant. The Commonwealth, through its experts, Katrin Rouse-Weir, Ed.D., and RobertH. Joss, Ph.D., contends that the respondent suffers from a mental abnormality: pedophilia. Both Dr. Rouse-Weir and Dr. Joss concluded that unless the respondent is confined to a secure facility he would be likely to commit additional sexual offenses. William Hazelett, Ph.D. was called by the Commonwealth, but concluded that the respondent did not suffer from a mental abnormality that would likely cause him to reoffend if not confined to a secure facility.
The respondent called experts Leonard A. Bard, Ph.D., and Joseph J. Plaud, Ph.D. Although they had different opinions as to whether or not the respondent suffers from a mental abnormality, they agreed that the respondent is not likely to commit additional sexual offenses if not confined to a secure facility.

2.Sexual Offenses and Convictions

On September 5, 1986, the respondent, a 54-year-old divorced white male, was found guilty of indecent exposure in the Chicopee District Court. The complaint alleged that he exposed himself to two young girls from his vehicle. He was sentenced to 6 months suspended with two years probation.
On January 28, 1991, the respondent was convicted of open and gross lewdness for similar conduct in the Chicopee District Court. His 2-year sentence was suspended and he was placed on probation for 5 years.
On August 1, 2006, the respondent was convicted of multiple counts of indecent assault and battery on a child under fourteen, the governing offense. The indictments alleged that on multiple occasions the respondent inappropriately touched his 8-year-old niece in the area of her buttocks and vagina. He was sentenced to a term not less than 3 and not more 4 years in prison with a concurrent 8-year term of probation.
It is undisputed that the respondent has been convicted of a designated sex offense as defined in Chapter 123A.

3.Mental Abnormality or Personality Disorder

A personality disorder is a congenital or acquired physical or mental condition that results in a general lack of power to control sexual impulses. G.L.c. 123A, § 1. All the experts agreed that the respondent does not suffer from a personality disorder. A mental abnormality is a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of sexual acts to a degree that makes the person a menace to the health and safety of other persons. Id. Four of the six experts opined that the respondent suffers from pedophilia.[2] Drs. Hazelett and Plaud considered a diagnosis of pedophilia, but concluded that the underlying facts did not warrant such a diagnosis.
In my judgment, the clear weight of the evidence is that the respondent meets the criteria for a clinical diagnosis of pedophilia, a mental abnormality as that term is defined in the statute. Accordingly, considering all of the evidence, I am persuaded beyond a reasonable doubt that the respondent suffers from a mental abnormality within the meaning of G.L.c. 123A, §1.

4.Likely to Engage in Sexual Offenses if not Confined to a Secure Facility

There is disagreement among the experts as to whether or not the respondent is likely to engage in sexual offenses if not confined to a secure facility.[3] Doctors Rouse-Weir and Joss opine that he is. Doctors Hazelett, Bard and Plaud have concluded that he is not.
All of the experts except Dr. Plaud used an empirically developed actuarial tool known as the STATIC-99 Sex Offender Risk Assessment to provide a basis for assessing the risk of the respondent reoffending. The STATIC-99 measures static or unchanging factors found to be related to sex offender recidivism. According to the results, the respondent has a high risk of sexually re-offending. However, Doctors Hazelett, Bard and Plaud testified that the STATIC-99 results overstate the risk of recidivism in this case. First, all the experts agree that the reliability of the STATIC-99 test has been called into question because it does not adequately take into consideration the reduced recidivism rate of older offenders like the respondent, age 44. Second, Drs. Hazelett, Bard and Plaud testified that the 13-year time span between the governing offense and the prior sexual offense indicates that the respondent is capable of controlling his sexual impulses for long periods of time. Third, the respondent’s successful completion of a 5-year probationary term in connection with a prior sex offense is further evidence, they assert, that he is capable of controlling his behavior when not incarcerated.
Moreover, Drs. Hazelett, Bard and Plaud testified that there are dynamic factors, not taken into consideration by the STATIC-99, which decrease the risk that the respondent will commit another sexual offense. The respondent has acknowledged his prior criminal conduct and accepted responsibility. He has demonstrated a positive attitude toward sex offender treatment and has been a regular participant in treatment while incarcerated. He has received no prison disci *555 plinary reports. Mandatory sex offender treatment will continue for four years as a condition of his probation if he is released which will take him to an age at which the rate of recidivism drops dramatically. For all of these reasons, they conclude that it is not likely that the respondent will engage in sexual offenses if released from a secure facility.
Of course, there is always a possibility that a sex offender with this clinical diagnosis may give in to the impulse to re-offend. But the statute requires more. The Commonwealth must prove beyond a reasonable doubt that it is likely that the respondent will again engage in sexual offenses if not confined to a secure facility. The Commonwealth has failed to meet that burden here. I do not come to this decision lightly, but the quantity and the quality of the expert testimony presented by the respondent leaves me with reasonable doubt regarding the likelihood that the respondent will re-offend if not confined. I must therefore conclude that the Commonwealth has failed to establish that the respondent is a sexually dangerous person as defined in G.L.c. 123A §1.

ORDER

It is therefore ORDERED that the respondent, upon completion of his sentence, be released from the treatment center and transported to the Hampden County Courthouse where he will immediately report to the Superior Court Probation Department.

 “Sexually dangerous person,” any person who has been (i) convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility; (ii) charged with a sexual offense and was determined to be incompetent to stand trial and who suffers from a mental abnormality or personality disorder which makes such person likely to engage in sexual offenses if not confined to a secure facility; or (iii) previously adjudicated as such by a court of the commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of 16 years, and who, as a result, is likely to attack or otherwise Inflict injuiy on such victims because of his uncontrolled or uncontrollable desires.

The Diagnostic and Statistical Manual of mental Disorders (DSM-JV-TR) defines Pedophilia as:
A. Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger).
B. The person has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty.
C. The person is at least 16 years of age and at least 5 years older that the child or children in Criterion A.

The Supreme Judicial Court in Commonwealth v. Boucher defined “likely” for purposes of determining whether a respondent is an SDP to mean “it is reasonably to be expected in the context of the particular facts and circumstances at hand.” 438 Mass. 274, 276 (2002). The Supreme Judicial Court refused to give the term “likely” a quantifiable statistical probability, declaring that its definition “demands contextual, not statistical, analysis,” but it did state that it requires “more than a mere propensity or possibility.” Id. at 277.