NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1416

COMMONWEALTH

vs.

ROBERT EARL.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was adjudicated to be a sexually dangerous person and was civilly committed to the Massachusetts Treatment Center.  On appeal the defendant argues that the judge gave an erroneous jury instruction regarding the assessment of expert testimony, that the prosecutor's closing argument was improper, and that the defendant's trial counsel was ineffective.  We affirm.

Background.  We summarize the facts that the jury could have found.  The defendant was born in 1953 and was sixty-nine years old at the time of trial.  In 1977, while serving in the United States Air Force, the defendant married, and he and his wife later had one daughter together.  The defendant also

adopted his wife's son, who was six years old at the time of the adoption.

The defendant sexually abused both his son and daughter over a period of several years.  The defendant would encourage the son to touch his own penis and had him touch the defendant's penis and, when the son got older, performed oral sex on him. When the daughter was six years old, the defendant started fondling her and "started to show her" how to touch his penis; this "escalated" to his touching the daughter's vagina with his fingers and penis.  The defendant also had the daughter touch and "masturbate[]" him.

In 1990, based on his abuse of his son and daughter, the defendant was convicted after a court martial of taking indecent liberties with a male child under sixteen years of age, taking indecent liberties with a female child under sixteen years of age, committing sodomy with a male child under sixteen years of age, and committing sodomy with a female child under sixteen years of age.  He was sentenced to eight years in Federal prison and ultimately served five years.

After being released from prison, the defendant moved to Massachusetts to live with his sister, first in Bridgewater and later in Taunton.  In 2009 or 2010, the defendant's nephew and

the nephew's stepdaughter Mary,[1] who was six years old, moved into the Taunton home.  Soon thereafter, the defendant began sexually abusing Mary, touching her vagina with his penis and hand, "masturbat[ing] her at times," "dry hump[ing]" her, and putting her hand on his penis.  The abuse continued until 2013.

Based on his abuse of Mary, the defendant pleaded guilty in 2017 to three counts of indecent assault and battery on a child under fourteen years old.  He received a two-year committed sentence and five years of probation.  His probation included the special conditions that he stay away from and have no contact with Mary and that he stay away from children under sixteen years old.

On January 14, 2019, the day he was released from jail, the defendant went to the Taunton home three times.  The first time, at approximately 3:30 P.M., the defendant saw Mary in the window and left after making eye contact with her.  The defendant returned to the home at approximately 5 P.M. and knocked on the door; when Mary's seven-year old brother answered, the defendant gave him a hug and left.  The defendant then returned again at approximately 11:30 P.M. and rang the doorbell several times, causing the defendant's nephew to call out from the window that he was going to call the police.

---

[1] A pseudonym.

In February 2019 the defendant admitting to violating the terms of his probation. A District Court judge then revoked the defendant's probation and imposed two consecutive sentences of two and one-half years in a house of correction.

In October 2022 the Commonwealth filed its current petition under G. L. c. 123A, § 12, to commit the defendant as a sexually dangerous person. Two qualified examiners, Dr. Gregg Belle and Dr. Kerry Nelligan, testified at trial, and both opined that the defendant met the criteria for a sexually dangerous person as defined in the statute. After the jury returned a verdict that the defendant was a sexually dangerous person, the judge ordered that he be committed to the Massachusetts Treatment Center for an indeterminate period of one day to life.

Discussion. 1. Jury instruction. The defendant challenges the following instruction, claiming that it incorrectly conveyed to the jury that they should believe the opinions of the experts if they believed the facts on which the opinions were based:

> "Now, in evaluating an expert's credibility you do that in the same way as you would for any other witness. All those things I just mentioned, how they act on the witness stand, are they frank or evasive in answering questions, that sort of thing, you can consider all of that. But you also have to consider two other things. First, do they actually have the education, training, and experience to express an opinion in that particular field? And secondly, do you believe the facts on which the opinions are based? Because if you don't believe the facts on which they're basing

4

> their opinions -- and remember, it's up to you to decide
> what facts are true -- if you don't believe those facts,
> then you have no reason to believe the opinions that
> they've given."

According to the defendant, this instruction was erroneous because it failed to convey to the jury that they were free to disregard the experts' opinions for any reason, even if they believed the facts underlying the opinions to be true.  Because the claim was not preserved, we review to determine whether any error gave rise to a substantial risk of a miscarriage of justice.  See Commonwealth v. Gaughan, 99 Mass. App. Ct. 74, 79 (2021).

We discern neither error nor a substantial risk of a miscarriage of justice.  "When reviewing jury instructions, we evaluate the instruction[s] as a whole, looking for the interpretation a reasonable juror would place on the judge's words" (quotations and citation omitted).  Commonwealth v. Odgren, 483 Mass. 41, 46 (2019).  The instructions here, viewed in their totality, accurately conveyed to the jury that they could choose to discredit the experts' opinions for any reason.  Contrary to the defendant's characterization, the challenged instruction did not "compel[]" the jury to believe the experts' opinions if they found the underlying facts to be true.  Rather, the instruction stated that the jury should disbelieve the experts' opinions if they found the underlying facts not to be

5

true.  The instruction also stated that the jury should evaluate an expert's credibility "in the same way as [they] would for any other witness," considering factors such as "how they act on the witness stand" and whether they were "frank or evasive in answering questions."

In addition, later in the charge, the judge instructed the jury as follows:

> "We had two witnesses who testified about their opinions as to whether [the defendant] is sexually dangerous.  It's up to you to decide whether you believe these opinions.  You may disregard any of these opinions, if you decide the opinion is based on facts or assumptions that are not true, if the opinion is based on conjecture or guesswork, if the witness did not have sufficient training or experience, or if for some other reason you conclude that the opinion is not credible.  Or you may choose to rely on any or either of the opinions if you find that they are credible."

This instruction was preceded by lengthy instructions regarding the elements that the Commonwealth had the burden to prove.  During those instructions the judge repeatedly told the jury that they could not find the defendant to be a sexually dangerous person unless they found at least one of the qualified examiners to be "credible," which they could decide based on "all the evidence presented during the trial."  Where the judge then immediately instructed that the jury could disregard an expert's opinion if they found it was based on facts that were not true "or if for some other reason [they] conclude[d] that the opinion [was] not credible," reasonable jurors would not

have understood the earlier challenged instruction to be limiting their consideration of the experts' opinions to the truth of the underlying facts.  See Odgren, 483 Mass. at 46.  Rather, the instructions as a whole conveyed that the jury were free to discredit the experts' opinions for any reason.  Thus, there was neither error nor a substantial risk of a miscarriage of justice.

2.  Closing argument.  The defendant argues that the prosecutor appealed to the jurors' emotions by stating that the defendant "committed despicable, horrible things to three innocent victims."  While this comment was better left unsaid, it was unobjected to and did not give rise to a substantial risk of a miscarriage of justice.  See Commonwealth v. Cuffee, 492 Mass. 25, 32 (2023).  Immediately following the comment, the prosecutor stated that the defendant "has been punished for committing those offenses," that "he has served his sentence for those offenses," and that "that's not the point of this proceeding."  The gravity of the underlying crimes (which would have been evident to the jury) was not a theme of the closing, and the judge instructed that the verdict "must not be based on sympathy or emotion."  We presume that the jury followed this instruction and that they had "a certain measure of sophistication in sorting out excessive claims on both sides."

Cuffee, supra at 34, quoting Commonwealth v. Wilson, 427 Mass. 336, 350 (1998). Furthermore, the absence of an objection "is some indication that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial." Commonwealth v. Beland, 436 Mass. 273, 289 (2002), quoting Commonwealth v. Sanchez, 405 Mass. 369, 375 (1989). In these circumstances we discern no substantial risk of a miscarriage of justice.

The defendant further argues that the prosecutor mischaracterized the evidence when he stated, "And as you heard, I believe from Dr. Belle, that while [the defendant] was in jail he still fantasized about those sexual interests and those fantasies that he had involving the children that he molested." This statement, which was unobjected to, was inaccurate in the sense that Dr. Belle did not testify that the defendant fantasized about all of his victims while incarcerated. Dr. Belle did testify, however, that the defendant "last had a sexual thought of [Mary] when he was incarcerated." The misstatement in the closing, using the plural "children" instead of the singular to argue that the defendant continued to have sexual thoughts of a prepubescent minor while incarcerated, did not create a substantial risk of a miscarriage of justice. See Cuffee, 492 Mass. at 32.

8

The defendant's last challenge to the closing argument concerns the prosecutor's comparison of the defendant's 4.6 percent risk of reoffense to a 4.6 percent risk of "a tornado or a blizzard or some other looming disaster."  The defendant argues that this was an improper appeal to the jurors' emotions.  While this objection was preserved, we discern no error.  In assessing a person's risk of reoffense, the jury must "determine what is 'likely' . . . by analyzing a number of factors, including the seriousness of the threatened harm." Commonwealth v. Boucher, 438 Mass. 274, 276 (2002).  The jury here were instructed in accordance with this principle, and the defendant does not claim any error in the instruction.  It was thus proper for the prosecutor to urge the jury to consider the seriousness of the threatened harm in reaching their verdict.

3.  Ineffective assistance.  Finally, the defendant argues that his trial counsel was ineffective for failing to impeach Dr. Belle's testimony that the defendant "last had a sexual thought of [Mary] when he was incarcerated."  The defendant claims that this testimony is contradicted by Dr. Belle's own written report, which states that the defendant "reported not having a sexual thought of [Mary] since he was incarcerated," and that it was manifestly unreasonable for trial counsel not to impeach Dr. Belle with the report.  We are unable to resolve

9

this claim, however, because the defendant did not move for a new trial and "the factual basis of the claim" does not "appear[] indisputably on the trial record."  Commonwealth v. Zinser, 446 Mass. 807, 811 (2006), quoting Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994).

Generally, "[f]ailure to impeach a witness does not, standing alone, amount to ineffective assistance."  Commonwealth v. Jenkins, 458 Mass. 791, 805 (2011).  But there is a more basic problem here, which is that the record does not establish that the statement in the report was impeachment evidence.  The defendant reads "since he was incarcerated" to mean "since he was locked up, not since he was released," but, as the Commonwealth argues, it could be read to mean "subsequent to" his incarceration.  The Commonwealth's reading is supported by the statement earlier in Dr. Belle's report that the defendant "reported that his last sexual thought of a child was when he was in jail."  Read in this way, the report is consistent with

10

Dr. Belle's testimony that the defendant "last had a sexual thought of [Mary] when he was incarcerated."  Further factual development is therefore necessary to resolve the defendant's claim.

Judgment affirmed.

By the Court (Henry, Shin & Brennan, JJ.[2]),

*Paul Little*

Clerk

Entered:  April 30, 2025.

---

[2] The panelists are listed in order of seniority.