NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-533

MARCUS DEAMICIS, petitioner.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2006, a Superior Court judge found that the petitioner was a sexually dangerous person (SDP), and he was civilly committed to the Massachusetts Treatment Center. In 2018, he filed a petition for examination and discharge under G. L. c. 123A, § 9, but a jury found that he remained an SDP. The petitioner appeals, arguing that the trial judge erred by rejecting the petitioner's proposed jury instructions, allowing the use of the Static-99R risk labels, refusing to exclude hearsay evidence of unproven sexual components of two of his criminal offenses, and allowing the Commonwealth to make an improper analogy in its closing argument. We affirm.

Background. The petitioner has been convicted of several criminal offenses in the past, some of which have been sexual in nature. In 1974, the petitioner was charged with two counts of assault and battery by means of a dangerous weapon and one count of assault with intent to rape, stemming from an incident

involving two teenage girls.  The petitioner approached the girls and repeatedly struck them with a baseball bat.  One of the girls alleged that the petitioner attempted to pull off her shorts and ripped them in the process.  The incident ended when one of the girls ran off and screamed for help, and the petitioner fled.  The assault with intent to rape charge was nol prossed and the petitioner was convicted of the two counts of assault and battery by means of a dangerous weapon.  The petitioner denied any sexual intent during this offense.

At another point in 1974, the petitioner was charged with and pleaded guilty to assault and battery by means of a dangerous weapon after he repeatedly struck a woman in the head with a lead pipe.  When the woman screamed, the petitioner fled.

In 1981, the petitioner was charged with indecent assault and battery and open and gross lewdness.  These charges stemmed from an incident in which the petitioner drove up to several teenagers and spoke to one of them while masturbating.  He then got out of his car, forced that teenage girl to the ground, and rubbed his hands on her legs.  One of the other teenagers screamed and ran away, at which point the petitioner fled.  The petitioner was convicted of both charges, but he denied there being any sexual intent during this incident, despite admitting that he had been masturbating.

In 1986, the petitioner committed the governing offenses during two separate incidents. As a result of the first incident, the petitioner was charged with and convicted of aggravated rape and armed robbery, and charges of assault and battery by means of a dangerous weapon, kidnapping, and indecent assault and battery were placed on file. During this incident, the petitioner grabbed a woman, forced her to remove her clothing, repeatedly inserted his hand into her vagina and rectum, punched her multiple times, held a metal weapon to her neck, and stole money from her. While the petitioner was using his hand to penetrate the woman, he asked her if she liked what he was doing, and, according to the woman, seemed pleased when she said she did not like it. He also seemed pleased when he removed his hand and saw that there was blood on it.

The second governing incident led to the petitioner being charged with and convicted of unarmed robbery and assault with intent to commit rape, and charges of kidnapping and indecent assault and battery were placed on file. The petitioner had grabbed another woman, ripped off her necklace, tore her shirt, and touched her breasts. When a car drove by and its headlights shone on the victim, the petitioner let her go and left.

As a result of his convictions for the governing offenses, the petitioner was sentenced to fifteen to twenty years of imprisonment, to be served concurrently. Prior to the

3

petitioner's release from incarceration, the Commonwealth filed a petition to commit him as an SDP.  The petitioner was adjudicated sexually dangerous in 2006 and has remained committed since that time.

In 2018, the petitioner filed a petition for examination and discharge, pursuant to G. L. c. 123A, § 9.  At the 2023 trial, three expert psychologists testified for the Commonwealth:  one designated forensic psychologist who serves as a member of the community access board (CAB), and two qualified examiners (QEs) who had reviewed the petitioner's record and interviewed him prior to trial.  All three of the Commonwealth's psychologists agreed that the petitioner suffered from sexual sadism disorder at a level that meets the statutory definition of a mental abnormality under G. L. c. 123A, § 1. The Commonwealth's psychologists also agreed that the petitioner suffered from a personality disorder within the meaning of the statute, although one expert labeled it antisocial personality disorder and the other two labeled it other specified personality disorder with antisocial traits.  These diagnoses were based on the petitioner's history of offenses, the level of violence used in his offenses, the sexual nature of some of the offenses, and his history of misconduct during his incarceration and commitment.

4

The Commonwealth's psychologists also noted that the petitioner has not been consistent in his treatment and has made only limited progress, as he is often defensive, has denied that his offenses were sexual in nature, and has demonstrated a lack of motivation in treatment.  All three of the Commonwealth's experts found that the petitioner possessed risk factors that placed him at an elevated risk of reoffending if released, and opined that he remained an SDP.

The petitioner presented two witnesses, both licensed psychologists, who testified on his behalf.  The jury returned a verdict that the petitioner remained an SDP.

Discussion.  The petitioner preserved all but one of his claims of error, which we review for prejudicial error.  See Green, petitioner, 475 Mass. 624, 629 (2016).  He did not preserve his claim related to closing argument, so we review to determine whether any error created a substantial risk of a miscarriage of justice.  R.B., petitioner, 479 Mass. 712, 717-718 (2018).

1.  Jury instructions.  The petitioner argues that the trial judge's rejection of his proposed jury instructions was reversible error.  We disagree.

The trial judge instructed the jury that the Commonwealth was not required to prove recent sexual misconduct in order to

5

show that the petitioner remained an SDP.  The petitioner

requested two related instructions:

> "You have heard that the Commonwealth is not required to prove recent sexual behavior.  At the same time, you may consider the absence of such conduct in reaching your verdict in this matter."

> "On the other hand, you may consider whether circumstances have intervened, such as treatment, age, or some other factor, so that [the petitioner} does not today suffer from the psychological forces, conditions, problems, or root causes that led him to commit those earlier acts of sexual misconduct."

The judge refused to give both instructions.  The petitioner

asserts that, without the proposed instructions, the jury could

have relied solely on the petitioner's past crimes to find that

he was currently an SDP.

Even the petitioner concedes that the judge's instructions

regarding recent sexual misconduct were supported by case law.

See Hill, petitioner, 422 Mass. 147, 157, cert. denied, 519 U.S.

867 (1996).  Although the petitioner is correct that it would

have been proper for the jury to consider the petitioner's

advanced age (he was seventy-one years old at the time of trial)

and the length of time since his last sexual offense, the judge

did not instruct the jury that they could not consider these

factors.  Additionally, the trial judge specifically instructed

the jury that "past misconduct, by itself, is not enough to

establish a present likelihood of future misconduct."

Therefore, the judge did not err in rejecting the petitioner's proposed jury instructions.

2. Static-99R risk labels. The petitioner challenges the use of the Static-99R risk labels, and claims that the judge erred in allowing their use. We conclude that even if there was error, it was not prejudicial.

The Static-99R is an actuarial measure of sexual offense recidivism that includes static factors relevant to an offender's risk of reoffense. The Commonwealth's QEs both gave the petitioner an overall Static-99R score of six, which has a risk label of "well above average."

In Commonwealth v. George, the Supreme Judicial Court held that the previous Static-99R risk labels of "moderate-high" and "high" should not have been admitted. 477 Mass. 331, 339, 341 (2017). However, the Static-99R risk labels have since been changed, and the Supreme Judicial Court has not ruled on the admissibility of these new labels. See id. at 340 n.8. Despite holding that the admission of the previous Static-99R risk labels was error, George held that the error was not prejudicial, as "expert testimony regarding the defendant's Static-99R risk category was appropriately limited," and "it was presented as only one of the many factors in the SDP calculus." Id. at 341.

We need not decide whether the admission of the new Static-99R risk labels was error because, as in George, we conclude that any error was not prejudicial. The Commonwealth's experts considered, and the jury heard evidence of, many risk factors, both static and dynamic. Indeed, one of the QEs even acknowledged in her report that, because the "Static-99R does not address all relevant risk factors for sex offenders, . . . a prudent evaluator will always consider other external factors, such as dynamic or changeable risk factors, that may influence risk in either direction." Here, as in George, the Commonwealth's experts "included in the sexual dangerousness calculus the defendant's family history, educational and work background, incarceration records, treatment history, and release plans. Given the limited nature of the use of the Static-99R," we conclude that any error was not prejudicial. George, supra.

3. Sexual component of offenses. The petitioner also argues that the trial judge erred in refusing to exclude evidence that two of his prior offenses had a sexual component when that component had not been admitted or proven. Even assuming this was error, we conclude that it was not prejudicial.

Under G. L. c. 123A, § 14 (c), certain hearsay evidence of past sexual offenses is admissible in an SDP trial, but some is

8

not.  A police report detailing alleged sexual offenses with which the Commonwealth had charged the petitioner and later nol prossed has been held inadmissible under § 14 (c).  Commonwealth v. Mackie, 100 Mass. App. Ct. 78, 86 (2021), citing Commonwealth v. Markvart, 437 Mass. 331, 336 (2002).  But, where the sexual nature of nonsexual offenses to which a defendant pleaded guilty was proved, admitted, or established, the police reports pertaining to those offenses may come in.  See Mackie, supra, at 88.

The petitioner challenges the admission of police reports detailing the alleged sexual nature of these two 1974 offenses, and the QE's treatment of them as "sexual offenses."  As a result of one of the incidents, the petitioner was charged with assault with intent to rape, but that charge was nol prossed, and the petitioner was convicted only of the two counts of assault and battery by means of a dangerous weapon.  The nol prossed assault with intent to rape charge and the details of the incident were admitted in evidence in the experts' reports.  Additionally, both of the QEs referred to the incident in their testimony as a "sexually motivated offense" or a "sexual offense."  While the petitioner admits that he physically assaulted the victims and pulled one of the girls' shorts, which he says he did in order to pull her down, he denies any sexual intent.

The other 1974 incident resulted in the petitioner being charged and convicted of assault and battery by means of a dangerous weapon after he hit a woman over the head with a pipe. The CAB representative testified that she believed it was a "sexually motivated offense," and the incident was listed in the CAB report and in one of the QEs' reports under a header discussing the petitioner's sexual offense history. The petitioner denies that the incident was sexually motivated.

The sexual aspect of these crimes was neither proved nor admitted. We will assume that it was also never established. And we will assume it was error under Mackie to refer to one or both of them as sexual offenses, because it increased the number of sexual offenses the experts referred to.

Nonetheless, any error was not prejudicial. The 1974 offenses, even if not sexual, were violent and therefore proper evidence supporting the petitioner's personality disorder diagnosis. There was strong evidence of the petitioner engaging in violent sexual offenses: one offense involved the petitioner masturbating in his car (which he admitted) and pinning a teenage girl to the ground, and the governing offenses involved the petitioner inserting his hand into one woman's vagina and rectum and touching another woman's breasts. Given the evidence of the offenses not challenged by the petitioner, the petitioner's misconduct during his commitment, and his treatment

10

progress, any error in the admission of or reference to the two 1974 offenses as having a sexual aspect was not prejudicial.

4.  _Commonwealth's closing argument analogy_.  Finally, the petitioner claims that an analogy made by the prosecutor during his closing argument was improper.  This is the only unpreserved claim of error he presents.  We agree that the analogy constituted error, but do not find that it created a substantial risk of a miscarriage of justice.

In order for a jury to find that a person remains an SDP, they must find that the person "suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility."  G. L. c. 123A, § 1.  The term "likely," as used in that definition, is not statutorily defined, but the Supreme Judicial Court has held that "something is 'likely' if it is reasonably to be expected in the context of the particular facts and circumstances at hand" (citation omitted).  _Commonwealth_ v. _Boucher_, 438 Mass. 274, 276 (2002).  Several factors are involved in the assessment of whether reoffense is "likely," including "the seriousness of the threatened harm, the relative certainty of the anticipated harm, and the possibility of successful intervention to prevent that harm."  _Id_.

11

Toward the end of the prosecutor's closing argument, as he was discussing the petitioner's risk of reoffense, he made the following analogy:

"Say there's a -- well, say the risk is 10 or 12 percent. If there's a jar of cookies in front of you, and someone tells you there's a 12 percent chance -- if you reach your hand under those cookies -- that one of them is stale, the anticipated harm is pretty low. So 12 percent, I think everybody -- if it's their favorite cookie -- is going to reach into that jar and grab their cookie because the relative harm is so low that, even if it's 12 percent risk, I'm still going to go in there because it's not that high a risk.

"But what if they told you those cookies -- 12 percent of those cookies were poison. Now, the anticipated harm is incredibly high. Now, balance that against a 12 percent chance of getting a poison cookie. It's no longer a stale cookie. The anticipated harm is much higher. I don't think anybody is going to reach in there with a 12 percent risk because of the nature of the anticipated harm. And when you balance those factors in the looking whether [the petitioner] is likely to reoffend, consider that example."

Although the Supreme Judicial Court has held that the seriousness of the harm is a factor in determining likelihood of reoffense, see Boucher, 438 Mass. at 276, the question before the jury is whether the risk is "likely." See G. L. c. 123A, § 1. The prosecutor's analogy to poison cookies, however, implies that in the defendant's case, any amount of risk is too great a risk. That is a misstatement of the law, and the prosecutor's analogy was thus improper.

However, we do not find that this error created a substantial risk of a miscarriage of justice. The judge

12

instructed the jury twice that the closing arguments were not evidence.  The judge also instructed that the jury must follow the instructions provided by the judge.  "The jury are presumed to follow the judge's instructions."  Commonwealth v. Andrade, 468 Mass. 543, 549 (2014).  Additionally, the evidence in this case was strong.  Consequently, we find that the erroneous analogy used by the prosecutor did not create a substantial risk of a miscarriage of justice.

Judgment affirmed.

By the Court (Rubin,
Englander & D'Angelo, JJ.[1]),

Clerk

Entered:  July 1, 2024.

---

[1] The panelists are listed in order of seniority.